**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. CR-09-2-M |
| | ) | |
| JOHNATHAN WHITFIELD, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

Before the Court is defendant Johnathan Whitfield's Motion to Suppress, filed April 17, 2009. On April 27, 2009, the government filed its response. On April 30, 2009, the Court conducted a hearing on defendant's motion to suppress. At the hearing, Andrew Walden, an Oklahoma City Police Department ("OCPD") officer, James Doyle, an OCPD sergeant, Cam Douglas, an OCPD sergeant, William Scrugs[1], an individual who has known defendant approximately seven to eight years, Penny Guiton[2], defendant's mother, and the defendant testified. Having reviewed the parties' submissions, and having heard the evidence presented, the Court makes its determination.

I.    Factual Background[3]

On August 19, 2007, at 10:17 p.m., OCPD Officer Walden was traveling southbound in the 2500 block of Kate in Oklahoma City, Oklahoma. At the stop sign at N.E. 23rd Street and Kate,

---

[1]Mr. Scrugs testified regarding seeing approximately five to seven police cars at the scene.

[2]Ms. Guiton testified regarding receiving three phone calls that her son had been stopped by the police, the time frame of these calls and her arriving on the scene, and what happened while she was at the scene.

[3]This factual background is based upon the evidence presented at the hearing.

Officer Walden stopped behind a 1986 Oldsmobile.  While stopped behind the Oldsmobile, Officer

Walden could see that the driver was not wearing his seatbelt.  When the driver turned eastbound

on N.E. 23rd Street, Officer Walden engaged his lights and stopped the vehicle at N.E. 23rd Street and

Fonshill.

Officer Walden approached the driver, later identified as defendant, asked for his driver's

license and insurance, and told defendant why he had stopped him.  Defendant stated: "Yeah, I just

left my house."  While talking with defendant, Officer Walden noticed defendant had several tattoos

on his arms, and based upon these tattoos and the statements defendant made regarding them,

Officer Walden believed defendant was a gang member.  Additionally, defendant asked Officer

Walden, "You remember me?  You're the one that took my gun a while back."  Officer Walden,

however, was not the officer who had taken a gun from defendant.  While Officer Walden was

talking with defendant, Sergeant Doyle arrived on the scene.

Officer Walden then asked defendant to step out of the car.  Defendant initially refused and

asked why he needed to step out of the car.  Officer Walden told defendant a couple more times to

get out of the car, and defendant eventually got out of the vehicle.  Officer Walden then escorted

defendant to his police car.  Before placing defendant in his police car, Officer Walden asked if he

could search his person, and defendant agreed.  During his pat search, Officer Walden found two

large folds of money in two separate pants pockets, which Officer Walden returned to the pockets.

Defendant was then placed in the backseat of Officer Walden's car.  Officer Walden then asked

defendant if he had a gun with him, and defendant stated that he did not.  Officer Walden further

asked defendant if he could search his car, and defendant told him no.  Officer Walden testified that

while defendant was in the police car, he became nervous and fidgety.  Officer Walden called

dispatch and requested a drug dog be sent to his location and then began to write defendant a ticket for his failure to wear his seatbelt.

Before Officer Walden finished writing the ticket, and approximately seven minutes after the initial stop of defendant's vehicle, Sergeant Douglas arrived with his drug dog "Tobi." Sergeant Douglas led Tobi to defendant's Oldsmobile and began to run him around the car. When Tobi got to the open driver's door window, he gave a positive alert to the odor of narcotics. Based upon Tobi's positive alert, Sergeant Douglas told Officer Walden and Sergeant Doyle there was probable cause and they could search the vehicle.

Sergeant Doyle then conducted a search of the Oldsmobile. During the search, Sergeant Doyle found a small black nylon bag inside of which was found a large plastic bag containing crack cocaine and marijuana. Sergeant Doyle gave Officer Walden the items he had found. Officer Walden advised defendant what had been found in his car and arrested him at that time. Defendant's car was impounded, and defendant was transported to the OCPD Springlake Station.

II.    Discussion

Defendant moves this Court to suppress the evidence seized from his vehicle following the August 19, 2007 traffic stop. "A traffic stop is a 'seizure' within the meaning of the Fourth Amendment, even though the purpose of the stop is limited and the resulting detention quite brief." *United States v. Hunnicutt*, 135 F.3d 1345, 1348 (10th Cir. 1998) (internal quotations and citation omitted). A routine traffic stop is analyzed under the principles developed for investigative detentions set forth in *Terry v. Ohio*, 392 U.S. 1 (1968). *Id.* To determine the reasonableness of an investigative detention, a court engages in a two-part inquiry: (1) whether the officer's action was justified at its inception, and (2) whether it was reasonably related in scope to the circumstances

which justified the interference in the first place.  *Id.*

> An initial traffic stop is valid under the Fourth Amendment not only if based on an observed traffic violation, but also if the officer has a reasonable articulable suspicion that a traffic or equipment violation has occurred or is occurring.  It is irrelevant that the officer may have had other subjective motives for stopping the vehicle.  Our sole inquiry is whether the particular officer had reasonable suspicion that the particular motorist violated any . . . of the multitude of applicable traffic and equipment regulations of the jurisdiction.

*Id.* at 1348 (internal quotations and citations omitted).

Having heard the evidence presented,[4] the Court finds that the initial traffic stop of defendant's Oldsmobile was valid under the Fourth Amendment.  Specifically, the Court finds that Officer Walden was justified in stopping the Oldsmobile based upon defendant's failure to wear a seatbelt.

A routine traffic stop "usually must last no longer than is necessary to effectuate the purpose of the stop and the scope of the detention must be carefully tailored to its underlying justification." *Id.* at 1349.  An officer conducting a routine traffic stop may request a driver's license and vehicle registration, run a computer check, and issue a citation.  *Id.*

Having heard the evidence presented, the Court finds that the scope of defendant's detention was never improperly exceeded and the length of detention was not improper.  Specifically, the Court finds that Officer Walden did not detain defendant beyond the time necessary to effectuate the purpose of the stop.  In fact, Officer Walden was still writing the ticket for defendant not wearing a seatbelt when Sergeant Douglas and Tobi arrived.  Additionally, Tobi's positive alert occurred very quickly after Sergeant Douglas began to run him around the vehicle.

---

[4]The Court would specifically find that Officer Walden is a credible witness.

4

Finally, "[a] dog alert creates general probable cause to search a vehicle." *United States v. Rosborough*, 366 F.3d 1145, 1153 (10th Cir. 2004).  The Court, therefore, finds that once Tobi alerted at the driver's door of the Oldsmobile, there was probable cause to search the vehicle.

III.    Conclusion

Accordingly, for the reasons set forth above, the Court DENIES defendant's Motion to Suppress [docket no. 33].

**IT IS SO ORDERED this 5th day of May, 2009.**

VICKI MILES-LaGRANGE
CHIEF UNITED STATES DISTRICT JUDGE

5